COMMERCIAL ADVERTISER ASS'N v. HAYNES.

(Supreme Court, Appellate Division, First Department. February 25, 1898.)

1. INJUNCTION—NEWSPAPERS—USE OF SIMILAR NAME.

A newspaper will not be restrained from using the name "New York Commercial," in connection with a vignette between the words "York" and "Commercial," and with another title in conspicuous letters immediately beneath the name, because of its similarity to the name of a newspaper, "The Commercial Advertiser," where the type and arrangement are dissimilar; where one is an evening paper, devoted to general news, and the other is a morning paper, which confines itself to commercial, financial, and shipping news, and the price is different; where the only evidence of injury is that orders for advertising intended for plaintiff are frequently addressed to the "Commercial," and that other papers in quoting from plaintiff's paper frequently give credit to the "New York Commercial"; and where the only evidence of injury consists in expressions of opinion, which are controverted by other witnesses,—since the facts do not justify the conclusion that the use of the name by the defendant is calculated to deceive any purchaser or advertiser of common intelligence.

2. SAME—EVIDENCE OF INJURY.

The fact that a newspaper has become popularly known as the "Commercial" or "The New York Commercial" may give it a proprietary right to such name, but, in order to restrain another paper from using that name, it must be shown that deception is probable and actual, or probable injury to the plaintiff will result.

Appeal from special term.

Action by the Commercial Advertiser Association against David O. Haynes, doing business under the firm name of D. O. Haynes & Co., to restrain defendant from imitating the name of plaintiff's newspaper.

Appeal by the defendant from an order of the special term, enjoining him from publishing any newspaper the name or title of which shall be "New York Com-

mercial," or any newspaper containing the words "Commercial," or "New York Commercial," as a partial title, unless in such partial title the word "Commercial" is used as an adjective in connection with a substantive, in such manner as not to imitate any name or title by which the plaintiff's newspaper is known. The plaintiff is a domestic corporation. As such, it is the owner of a daily evening newspaper, which is published in the city of New York, under the name of "The Commercial Advertiser," and is devoted to general news. The defendant is the president and principal stockholder of the Shipping & Commercial List Company, which is the proprietor of a weekly commercial and financial newspaper, called "The Shipping and Commercial List and New York Price Current," also published in this city. He now proposes to change this weekly to a daily newspaper, and to change its name to "New York Commercial," retaining, however, the title of the weekly paper in conspicuous letters immediately beneath this new name. He also proposes to place between the words "New York" and "Commercial," in the new title, a vignette representing a woman holding scales in one hand and a sword in the other. The exclusively commercial character of the weekly is to be retained, and the new daily is to be sold for five cents per copy. It should be added that this proposed new daily is to be markedly dissimilar to the plaintiff's evening paper in type, heading, arrangement, character, and reading matter, and that it appeals to an entirely different class of readers. Some of the details of these distinctive matters of difference are stated in the opinion. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

Arthur H. Master, for appellant.
William Williams, for respondent.

BARRETT, J.    We find nothing in the affidavits presented by the plaintiff to warrant the conclusion of the learned justice at special term that "the proofs established that the name adopted by the defendant for his newspaper will lead to its being confused with the plaintiff's newspaper, and that injury to the plaintiff and deception upon the public will result." It may be that some slight confusion will arise until the character of the two publications is clearly understood by newspaper writers and advertisers. There can, however, be no confusion on the part of sane purchasers. This possible confusion on the part of newspaper writers and advertisers may cause some temporary inconvenience to both parties, but there is not a particle of evidence that it has caused, or is likely to cause, "injury to the plaintiff or deception upon the public." Indeed, the only injury inferable from the facts stated in the plaintiff's papers is possible injury to the defendant. The plaintiff's president says that letters and a telephone message intended for the defendant have been received by the plaintiff. He does not state, nor does he even intimate, that letters or messages intended for the plaintiff have miscarried or have been delivered to the defendant. He also says that orders for advertising intended for the plaintiff are frequently addressed to the "Commercial," and that other journals throughout the country, in quoting from the plaintiff's paper, frequently give credit to the "New York Commercial." The only other attempt on the plaintiff's part to prove possible injury consists in mere expressions of opinion. Thus, Mr. James A. Hibson deposes to the probability of confusion arising out of the similarity of names, and adds that "much business, especially advertising business, may thereby be lost to the Commercial Adver-

tiser." Mr. George P. Rowell also expresses the opinion that, as a result of such confusion, "advertising intended for the Commercial Advertiser will very frequently reach the office of the newspaper called the 'Commercial.'" These opinions are combated and more than met by opinions to the contrary effect, expressed by Messrs. Laffan, Lancaster, Criswell, Gordon, and Hedge. These latter gentlemen say that there is no possibility of such confusion or of such pecuniary damage as the plaintiff claims; and their affidavits are controlling because of the undisputed facts which form the basis of their opinions. These facts, as detailed by Mr. Laffan, are, in the main, that the differences in the physical appearance of the two papers are so marked and distinctive that no possibility for confusion would arise; that the titles of the two papers are printed in type of different size, and wholly dissimilar character; that the type in the body of the two papers and the general typographical arrangement thereof are also different; that the defendant's paper has as part of its title a large woodcut or vignette, while the plaintiff's has none; that the character of the two papers is entirely different; that the plaintiff's is an evening newspaper, which publishes the general news of the day, and which is sold at two cents a copy, while the defendant's is a morning paper, which confines itself to commercial, financial, trade, and shipping news, and which is published at five cents a copy. Upon these proofs, the case for an injunction is not nearly as strong as was that for the plaintiff in Borthwick v. Evening Post, 37 Ch. Div. 449, where an injunction granted by Mr. Justice Kay was reversed by the lords justices. The plaintiff there was the publisher of an old and established newspaper called "The Morning Post." The defendants, who had acquired control of a newspaper called "The Daily Recorder," proceeded to issue an evening paper which they called "The Evening Post," adding in smaller type, under this title, the words, "With Which is Incorporated the Daily Recorder." There was some similarity between the printing of the name and the general typography of the two newspapers, and it appeared that several applications had been made at the office of the Morning Post for copies of the Evening Post. The lords justice reversed the injunction order, upon the ground that there was no reasonable prospect of damage or injury to the Morning Post. Lord Justice Cotton summed the case up in these words: "In my opinion, in order to justify the court in granting an injunction, we ought to be satisfied that there probably will be injury to the pockets of the plaintiff. There is only a suggestion of possible injury, and I think that we ought not to act on that." Lord Bowen said that he thought "a trick had been attempted by the defendants' newspaper," but he concurred in the reversal upon the ground that the Morning Post was "not likely to be hurt." Lord Chief Justice Coleridge put his judgment upon the ground that there was no evidence "that, at least as regards the Morning Post, any damage had been inflicted." Speaking of the applications that had been made at the office of the Morning Post for copies of the Evening Post, he added: "There have been twenty applications, and twenty only, made to the Morning Post for copies of the Evening Post. But it is not suggested—at least, there is no evidence given of any kind—

that a single copy less of the Morning Post has been sold than would have been if the defendants had not taken the action they have. Under those circumstances, it seems to me that there is not enough in this case to warrant the interference of the court by injunction." The rule which governs in motions of the present character is well stated in this latter case.    That rule is that while the court will undoubtedly afford relief against such a simulation of the plaintiff's publication as is calculated to mislead the public, and consequently to injure the newspaper's circulation and patronage, yet it will not interfere where no harm has been done to the plaintiff or is likely to be done to him by the publication complained of.    The cases, both in England and in this country, are all one way as to this general principle (Bradbury v. Beeton, 39 Law J. Ch. 57; Ingram v. Stiff, 5 Jur. [N. S.] 947; Lee v. Haley, 5 Ch. App. Cas. 155; Clement v. Maddick, 5 Jur. [N. S.] 592; Snowden v. Noah, Hopk. Ch. 347; Bell v. Locke, 8 Paige, 75; Tallcot v. Moore, 6 Hun, 106; Stephens v. De Conto, 4 Abb. Prac. [N. S.] 47; Matsell v. Flanagan, 2 Abb. Prac. [N. S.] 459; Publishing Co. v. Dobinson, 82 Fed. 56; Richardson & Boynton Co. v. Richardson & Morgan Co. [Sup.] 8 N. Y. Supp. 53; Farmers' Loan & Trust Co. v. Farmers' Loan & Trust Co. [Sup.] 1 N. Y. Supp. 44); and the real question here, therefore, is as to its applicability to the present facts.    It is on this latter head alone that we differ with the learned justice below.    We entirely agree with him that "the adoption of a name which, though not an exact imitation of the whole name used by the injured party, is calculated to deceive and mislead, may be enjoined."    We find nothing, however, in the facts presented by the plaintiff, to justify the conclusion that the adoption and use by the defendant here of the name "New York Commercial," in the manner and under the circumstances disclosed, is calculated to deceive any purchaser or advertiser—to quote Vice Chancellor Malins in Bradbury v. Beeton, supra—"of common intelligence and observation."

The plaintiff's counsel also contends that its newspaper is popularly known as the "Commercial" or "The New York Commercial," and that the courts, to quote the language of his brief, "protect the popular name as readily as they do the real name."    Assuming the latter proposition to be correct, it does not aid the plaintiff.    The fact that its newspaper, in common parlance, is known as the "Commercial" or "The New York Commercial," may be a consideration bearing upon the question of actual or probable damage.    It does not, however, of itself, give a proprietary right to the exclusive use of the adjective, regardless of any question of actual or probable injury to the plaintiff.    In fact, the plaintiff does not claim the right to enjoin any use whatever of the adjective "Commercial" in connection with newspaper publications.    On the contrary, it frankly admits that the defendant cannot be restrained from naming his paper "The New York Commercial List" or "Commercial American."    It would seem to follow that, even if the popular voice has given the plaintiff a property right in the popular phrase, yet the defendant cannot be restrained from naming his paper "New York Commercial," unless his doing so misleads or tends to mislead the public, to the actual or probable in-

jury of the defendant.   It is fundamental in all such cases that the plaintiff must show that deception is probable, or he cannot succeed in obtaining the relief he seeks.     Seb. Trade-Marks (2d Ed.) 245.    If he shows such deception, actual or probable, and consequent injury, actual or probable, he is entitled to protection, even though his trademark has been innocently and conscientiously made use of.    So far we can freely go with the learned counsel of the plaintiff.    But we cannot quite follow his reasoning when he contends that the public, by its short way of referring to the "Commercial Advertiser," has given the plaintiff some kind of an undefined trade-mark in this popular form of speech,—a doctrine which would equally apply to a "sobriquet" or diminutive; that such popular form of speech has thus become the plaintiff's "property"; and that its unauthorized use by the defendant, whether likely to injure the plaintiff or not, should be absolutely enjoined, as an invasion of a strict property right.    We think this position is fanciful and farfetched.    It is certainly supported by none of the cases which he cites; and it ignores the fundamental doctrine upon which relief in this class of cases is afforded, namely, misleading, or the tendency to mislead, with consequent injury, actual or probable.

It follows that the order appealed from should be reversed, with $10 costs, and the disbursements of the appeal, and the motion for an injunction denied, with $10 costs.    All concur.