(23 Misc. Rep. 66.)

## CLINTON METALLIC PAINT CO. v. NEW YORK METALLIC PAINT CO.
### (two cases).

(Supreme Court, Special Term, Kings County. March 29, 1898.)

1. TRADE-MARKS—VALIDITY.
   "Clinton Hematite Red," and "Metallic Clinton Paint," indicate a paint pigment made from Clinton hematite ore, and may not be exclusively appropriated as a trade-mark for such product.

2. SAME.
   A trade-mark may be wholly exclusive, or of a lesser degree of exclusiveness.

3. SAME—COMBINATION OF WORDS.
   A combination of words and figures or symbols may constitute a trade-mark, though some or each of the parts standing alone would not constitute a trade-mark, and could be used without infringement. In such a case it is the entire combination and setting which make the trade-mark.

**4. SAME—PHYSICAL OBJECTS.**

Actual barrels, boxes and the like may not be appropriated for trade-marks for their particular size, style or shape; but this has reference only to the physical objects themselves, and not to pictures or devices of them for labels or brands.

**5. SAME—DESCRIPTIVE WORDS.**

Words or names which describe the product or ware to which they are applied, by indicating its kind, quality or ingredients, may not be exclusively appropriated as trade-marks therefor. Words belonging to the common stock of words many not be exclusively appropriated as trade-marks.

**6. SAME—GEOGRAPHICAL NAME.**

The name of a place or country may not be exclusively appropriated for a trade-mark for a product or ware of such place or country, against one offering for sale a similar product or ware of the same place or country. It is only good against one using it for a product or ware not of such place or country. If it be used arbitrarily or fancifully, it is only good against one using it in the same way, and not against one using it truthfully, namely, in its actual meaning.

**7. SAME—INTENT OF USER.**

The intention of the defendant is not material on the question of granting relief by injunction against infringement. Fraud is only material on the question of damages.

Suits by the Clinton Metallic Paint Company against the New York Metallic Paint Company.    Judgments for plaintiff.

These two suits are brought to enjoin defendant from using two alleged trade-marks of the plaintiff.

The plaintiff was incorporated in 1886, and has ever since been manufacturing in the township of Kirkland, N. Y., near the village of Clinton, in the said town, a red pigment for coloring mortar, brick, tile and all clay products. It makes such pigment out of iron ore which it mines in the same place. The process of manufacture is to pass the ore through a gang of crushing, rolling and grinding machines, until it finally comes out a fine powder. While the ore is going through the grinding machines, another material, which is a trade secret and not disclosed, is added. The same or a similar product from such iron ore mined in the said section, was manufactured and sold before the plaintiff engaged in such manufacture. Many persons are engaged in such manufacture. Such iron ore is found in a district near the said village of Clinton. It is a hematite, or blood red ore, as that word signifies. It is peculiar to that district, and some others in this country, and is geologically known as Clinton hematite, or Clinton ore, wherever found, having been so named for De Witt Clinton. In 1887 the plaintiff adopted a label for its said product, consisting of the perspective representation of a barrel with the head toward the observer, showing the lines of the staves and of the slats of the head, and bearing the name or brand, "Clinton Hematite Red," printed in the center of the said barrel head, each word being under the preceding one. The label is reddish in color, except that the letters and lines, and part of the sides of the barrel, are white. This label is pasted on each box or barrel in which the product is sold by the plaintiff, and the plaintiff has identified its product therewith, and created a large and valuable trade thereunder. In June, 1897, the defendant company was incorporated, and it has ever since been manufacturing and selling a pigment of the same kind. Its manufactory is in Brooklyn, N. Y., but the ore it uses in such manufacture is mined for it in the said Clinton district, and is the said Clinton hematite or red ore peculiar to that district. It is advertising and using upon its boxes and barrels, as its own, a label in color, figure, form, arrangement and all, like that of the plaintiff. This is being done by the defendant for the purpose of causing the customers of the plaintiff in particular, and all others, to confound the defendant's product with that of the plaintiff, and thereby enable it to get the trade of the plaintiff, and it has extensively done so.

The plaintiff during the same time has manufactured the said pigment out of the said ore, without adding the said secret material in the process, and has sold the same under the same label, except that the words "Metallic Clinton Paint" appear thereon in the place of the said other words. This latter pig-

ment is sold to be prepared as paint by being ground in oil. The defendant is also manufacturing the latter kind of pigment, made of the said hematite ore from the said Clinton district, and is in the same way advertising and selling it, as aforesaid, under the plaintiff's said last mentioned label.

Charles E. Mitchell and Henry E. Brigham, for plaintiff.
Robert H. Wilson, for defendant.

GAYNOR, J.    It is often the case that a combination of words and figures or symbols will constitute a trade-mark, although some or each of the particular parts of the combination, standing alone, would not constitute a trade-mark, and could be used without infringement. In such a case it is the entire combination and setting which makes the trade-mark. Fischer v. Blank, 138 N. Y. 244, 33 N. E. 1040. This principle applies to the present case. The words "Clinton Hematite Red," and "Metallic Clinton Paint," in the particular combination, setting and surroundings in which the plaintiff has placed them, are parts of a lawful trade-mark, and may not be used by the defendant in the same resemblance, or in any resemblance that would mislead a casual purchaser of ordinary observation. The particular representation of a barrel adopted by the plaintiff, is lawful and exclusive. Actual barrels, boxes, and the like, may not be appropriated for trade-marks for their particular size, style or shape; but this has reference only to the physical objects themselves, and not to pictures or devices of them for labels or brands. Moorman v. Hoge, 2 Sawy. 78, Fed. Cas. No. 9,783; Morgan v. Troxell, 89 N. Y. 292; Fischer v. Blank, 138 N. Y. 244, 33 N. E. 1040; Browne, Trade-Marks, § 138. The cases sometimes cited to the contrary are not so in fact, covering as they do combinations of package, color, and label. Cox, Manual Trade-Mark Cas., index "Packages." The defendant is using an almost precise imitation of the plaintiff's combination trade-mark, and must be restrained therefrom, or from using any other harmful imitation.

But the court may not go further, and, singling out the said words, absolutely prohibit their use by the defendant in any way whatever. I do not see that the name "Clinton Hematite Red" may be exclusively appropriated by the plaintiff for its product. It is nothing but the obvious and correct name of such product. It is descriptive of such product, and discloses of what it is made. Words or names which describe the product or ware to which they are applied, by indicating its kind, quality or ingredients, may not be exclusively appropriated as a trade-mark therefor. If they show forth these facts, they are not saved by also showing the particular origin, production or ownership of the thing. The office of a trade-mark is to show this latter only, and if it shows the former also, it is not maintainable against those who can truthfully use it to describe or name their similar article. Words of the common stock of words, expressive of a fact or facts, may be used by any one for that purpose. No one may take them to his exclusive use to mark his product or ware, against one by whom they are being truthfully used to inform the public of the kind, character or composition of his similar product or ware. As all persons have the right to produce and vend similar articles, it follows that they have the right to use any words, general or scientific, to

describe them. Caswell v. Davis, 58 N. Y. 223; Taylor v. Gillies, 59 N. Y. 331; Popham v. Cole, 66 N. Y. 69; Hier v. Abrahams, 82 N. Y. 519; Van Beil v. Prescott, Id. 630; Selchow v. Baker, 93 N. Y. 59; Baking Powder Co. v. Sherrell, Id. 331; Waterman v. Shipman, 130 N. Y. 301, 29 N. E. 111; Keasbey v. Chemical Works, 142 N. Y. 467, 37 N. E. 476; Rogers v. Rogers, 11 Fed. 495; Canal Co. v. Clark, 13 Wall. 311; Cox, Manual Trade-Mark Cas. 536, "Linoleum." In Caswell v. Davis, the name "Ferro-Phosphorated Elixir of Calisaya Bark" was not upheld as a trade-mark, for the reason that it disclosed the ingredients, and 'was therefore descriptive of the article. In Keasby v. Chemical Works, the name "Bromo-Caffeine" was upheld, as at most the word "bromo" only suggested "that some one among the hundreds of substances that bromine may combine with" was used, and that was deemed too indefinite to be descriptive of the actual ingredient. Clinton hematite is a red iron ore mined near Clinton, N. Y., and well known in commerce and geology by that name. By rendering it into a fine powder, a well-known article of commerce, used to color mortar and clay products, and to make paint, has been produced longer than the plaintiff has been engaged in its production; and many are engaged in the same business. The words "Clinton Hematite Red" simply express what such article of commerce is. They therefore cannot be appropriated by the plaintiff against another manufacturer of such article, though they might be against one palming off some false article under them. And the same is the case of the name "Metallic Clinton Paint." The words "metallic paint" are obviously generic and descriptive. Prince Mfg. Co. v. Prince Metallic Paint Co., 135 N. Y. 33, 31 N. E. 990. The word "Clinton" is the name of the metal itself, and is also the name of the village near which it is mined, and for both of these reasons it is applied to the mine district. Both names are as descriptive and truthful as used by the defendant as they are as used by the plaintiff, for each makes a similar article out of the said Clinton metallic ore. That the plaintiff adds some secret material to one of its products cannot enable it to exclusively appropriate the name of the principal material.

It can make no difference that the plaintiff manufactures near the said village of Clinton, and in or near the said mine district, while the defendant manufactures in Brooklyn. The essential thing is that they both use the said Clinton ore to make their products, and it is that which the names in dispute are meant to and do express to the trade. Moreover, the word "Clinton," as the actual name of the said village, or the colloquial name of the said mine district, cannot be taken by the plaintiff for an exclusive trade-mark. It is not quite true to state the rule to be that the name of a place or country may not be appropriated for a trade-mark. It may be so appropriated, but not exclusively. A trade-mark may be wholly exclusive, or of any lesser degree of exclusiveness. The prior appropriation of the name of a place or country for a product or ware of that place or country, is not good against another offering for sale a similar product or ware of the same place or country. Such prior appropriation is good against one using said name for a product or ware not of such place or country. Such a name may also be exclusively appropriated

as a mere arbitrary or fanciful name for an article generally known not to be of such place or country, and not represented to be such, against every person subsequently offering a similar article, except such article be of such place or country. One so using such a name arbitrarily or fancifully may only have another restrained from using it in the same way, but not from using it truthfully, viz., in its actual meaning. Newman v. Alvord, 51 N. Y. 189; · Lead Co. v. Masury, 25 Barb. 416; Lea v. Wolf, 13 Abb. Prac. (N. S.) 389, on appeal, 15 Abb. Prac. (N. S.) 1; Wolf v. Goulard, 18 How. Prac. 64; Fleischmann v. Schuckmann, 62 How. Prac. 92; Browne, Trade-Marks, § 191; Canal Co. v. Clark, 13 Wall. 311; Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151. The rule thus stated in its details is seen to exclude the plaintiff from any exclusive right in the local name of "Clinton" as against the defendant. I have not failed to scrutinize again the leading English case usually cited to the contrary. McAndrew v. Bassett, 10 Jur. (N. S.) 492, 550. It upholds as exclusive the word "Anatolia" stamped on liquorice sticks made of the juice of liquorice roots from the province of Anatolia in Turkey. The decision was not put upon the tenable ground that the defendant was falsely using the word for liquorice made of juice not from Anatolia, which was the fact (see purchaser's order in statement of case, page 492), but upon the broad ground that the plaintiff for having first used it had an exclusive right to it. See 13 Wall., at page 326. It is not in harmony with the decisions in this country, or on the continent of Europe, and does not seem to have a precision of statement which brings out any principle which was followed in the decision of it. The "Glenfield Starch," "Stone Ale," and "Seixo Wine" cases (Wotherspoon v. Currie, L. R. 5 H. L. 508; Thompson v. Montgomery, 41 Ch. Div. 35; Seixo v. Provozende, 12 Jur. [N. S.] 215), are, I suppose, reconcilable with the restricted principle (if such principle be established with us), that when it is found as a fact that a generic or descriptive name has by long and unquestioned exclusive appropriation and use by an individual for a certain article of commerce, lost its general and usual significance as so used, and acquired in connection with such article a secondary sense, by becoming only the trade designation thereof, and indicating to the public nothing but its particular origin, production or ownership, a trade-mark therein may be upheld on that ground.

And the intention of the defendant here is immaterial. If the plaintiff has no exclusive right to the words in question as a trade-mark, fraud cannot be predicated upon their use by the defendant. It is often repeated that equity takes jurisdiction of trade-mark infringements under the head or on the ground of fraud, and there is some dicta that such jurisdiction will be taken when there is fraud where it would not be taken in the absence of fraud. This seems not to be at all so. Equity gives relief by injunction in such cases regardless of the intention of the defendant. Even though his infringement be wholly honest, equity will restrain its continuance. If the resemblance to a trade-mark be such as to mislead persons of ordinary observation, not upon a comparison, but upon casual sight of the imitation, equity gives relief by injunction. The infringement may or may not be a fraud, but in either case the relief is based on the infringe-

ment.    The jurisdiction of equity in such cases rests not upon fraud, but upon the impossibility, shown by experience, of getting adequate redress in damages at law.    It is also said in some cases to be based on imposition practiced upon the public by such infringements, but this seems rather fanciful.    The only redress for a trade-mark infringement was at first by an action in a common-law court for damages for deceit.    We find such an action upheld as early as 1590 (reported in Southern v. How, Poph. 143), whereas we find the court of chancery refusing its jurisdiction to a bill for an injunction to restrain such an infringement as late as 1742 (Blanchard v. Hill, 2 Atk. 484). But chancery finally came to entertain bills to restrain such infringements, and the plaintiff having established in such a suit his right to that relief, his damages were assessed therein also.    The declaration or complaint in the common-law action was for damages for deceit or fraud, and the damages in chancery were assessed upon the same principle, no damages being given unless there was fraud.    From this dual aspect in which such suits were presented to chancery, it came to be inadvertently said once, and then occasionally, that the relief by injunction was based upon fraud also; and this is found to have now and again been repeated down to date.    But if the line of cases be carefully examined with an eye to this matter from the beginning, it will be readily seen that the question of intention, or of fraud, has to do only with the damages to be assessed, and not with the question of relief by injunction.    Edelsten v. Edelsten, 1 De Gex, J. & S. 185; Cox, Manual Trade-Mark Cas., index "Fraudulent"; Manufacturing Co. v. Wilson, 2 Ch. Div. 434, 448, 3 App. Cas. 376; Colman v. Crump, 70 N. Y. 573; Hier v. Abrahams, 82 N. Y. 519; Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904.

Judgment for the plaintiff accordingly.