### S. R. FEIL CO. v. JOHN E. ROBBINS CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915.)

No. 2089.

1. TRADE-MARKS AND TRADE-NAMES ☞3—INFRINGEMENT—COMPOUND WORD.
   Where a trade-mark consists of a hyphenated word, one part of which is descriptive, and not subject to exclusive appropriation, while the other is purely arbitrary, the appropriation by another of the descriptive part only is not an infringement.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names. Cent. Dig. §§ 4–7; Dec. Dig. ☞3.]

2. TRADE-MARKS AND TRADE-NAMES ☞57—INFRINGEMENT.
   One is not required to so distinguish his goods that careless buyers will know by whom they are made and sold.
   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 65; Dec. Dig. ☞57.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

3. TRADE-MARKS AND TRADE-NAMES ⚙⟿59—INFRINGEMENT—SAL-VET.

    The trade-mark "Sal-Vet" *held* not infringed by the word "SalTone."

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. ⚙⟿59.]

4. TRADE-MARKS AND TRADE-NAMES ⚙⟿93—UNFAIR COMPETITION.

    That defendant, which made and sold a veterinary remedy similar to one sold by complainant, paraphrased complainant's advertising literature, including its cuts and pictures, and also in response to decoy letters ordering complainant's remedy sent its own, *held* insufficient to establish unfair competition in a legal sense; defendant having distinguished its product by its dress and name of maker, so that any purchaser using any care would not be deceived.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. ⚙⟿93.

    Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

5. WORDS AND PHRASES—"SAL."

    The word "sal" means salt, and is used commonly as a prefix to scientific terms, in which connection it signifies that some form of salt is the substantial element of the preparation.

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Suit in equity by the S. R. Feil Company against the John E. Robbins Company. Decree for defendant, and complainant appeals. Affirmed.

Henry M. Dowling, of Indianapolis, Ind., and Homer C. Underwood, of Ft. Wayne, Ind., for appellant.

Ferdinand Winter, of Indianapolis, Ind., and Mr. Craig, for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge. The bill in this case first charges the appellee, hereinafter termed defendant, with infringement of the registered trade-mark "Sal-Vet," hyphenated, belonging to appellant, hereinafter called complainant, by the use of the registered trade-mark "SalTone," not hyphenated, and then, secondly, charges unfair competition. On final hearing the District Court dismissed the bill for want of equity.

[5] It will be noted that complainant's trade-mark consists of two distinct terms—Sal, and Vet. From the evidence it appears that complainant's trade-mark was well established when defendant began to employ the term "SalTone"; that one of the principal ingredients of both remedies is salt; that the dictionary definition of the word "sal" is "salt," and that the word "sal" is principally used in connection with scientific subjects, as chemistry. It is the common prefix for names of various preparations, such as the well known sal volatile, sal soda, and sal ammoniac, in which connection it is always understood to mean that some form of salt is a substantial element of the preparation. It is one of those descriptive words which the courts have held could not be appropriated as a trade-mark. Thus, in Standard Paint Company v. Trinidad Asphalt Company, 220 U. S. 453, 31 Sup. Ct. 457, 55 L. Ed. 536, with reference to the word "rubberoid," the court says:

"No sign or form of words can be appropriated as a valid trade-mark, which from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose. * * * Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark, and the exclusive use of it be entitled to legal protection."

In the opinion rendered by the Circuit Court of Appeals for the Eighth Circuit in said cause—163 Fed., pp. 979 and 980, 90 C. C. A. 195—the authorities upon this subject are exhaustively cited.

[1-3] There is no such word as "Vet" in the dictionaries, nor does the evidence disclose any, except as used by complainant. It is alleged by defendant to be an abbreviation of the word "veterinary," but such definition is a mere assumption from the fact that it is a veterinary remedy. If it be assumed that the use of the common word "sal," in hyphenated association with the arbitrary term "Vet," may constitute a proper trade-mark, as was held in Wolfe v. Barnett, 24 La. Ann. 97, 13 Am. Rep. 111, Clinton Metalic Paint Co. v. N. Y. Metalic Paint Co., 23 Misc. Rep. 66, 50 N. Y. Supp. 437, Solis Cigar Co. v. Pozo, 16 Colo. 388, 26 Pac. 556, 25 Am. St. Rep. 279, and Paul on Trade-Marks (1903) § 40, yet where only the common and nonexclusive feature is used, there is no infringement. 38 Cyc. p. 755, and cases cited. In the present case defendant has appropriated only the term "Sal," which he and every one else was at liberty to use. As between the arbitrary term "Vet" and the word "Tone," there can be no reasonable claim to resemblance. No ordinary purchaser would take the one for the other, even in combination with the word "Sal." One is not required to so distinguish his goods that careless buyers will know by whom they are made and sold. Wrisley Co. v. Iowa Soap Co., 122 Fed. 796, 59 C. C. A. 54; Johnson v. Parr, Russ, Eq. Cases (Nova Scotia) 98. In this view of the law as applied to the facts of this case, it is of no consequence that consumers of complainant's product recognized the goods bearing the term "Sal-Vet" as the goods of complainant. Nor is it necessary to determine whether the term "Sal-Vet" had acquired a secondary meaning as representing complainant's product. Defendant has not used that term, and consequently has not infringed it.

[4] With reference to the charge of unfair competition, it appears from the record that defendant practically paraphrased complainant's circulars and other advertising, including its cuts and pictorial matter, and that it followed complainant in the use of blank order forms or coupons. It is also in evidence that, when complainant caused five decoy letters to be sent asking defendant for "Sal-Vet," defendant filled the orders with "SalTone," and that a number of people—eight in all—bought "SalTone" when they supposed they were getting "Sal-Vet." Defendant even followed complainant in using cuts in which the animals were shown to be so eager for the preparation that they besieged and partook from a barrel in which it was shipped.

In the paraphrasing of complainant's advertising literature and the approximation of its pictorial matter, defendant's actions were unethical rather than fraudulent. It is not shown that defendant ever sought, in its regular trade, to sell its product for that of complainant, but has insisted that "SalTone" was much the same and just as good as "Sal-

Vet." The marketing of the two remedies ran side by side for several years in a friendly manner. Salesmen were advised by defendant to do no "knocking," and not to seek to sell to those merchants dealing in "Sal-Vet." The diseases sought to be cured were the same, as were the animals. The evidence discloses that the two mixtures accomplished the same result. Naturally the advertising would be more or less similar both in language and pictures. There was no bad faith in using the order forms or coupons, since these are shown to be in common use in the mail order business. With the exception of the five decoy orders sent by parties under complainant's direction, and filled by sending "SalTone," it does not appear that defendant's object was to secure complainant's trade unfairly. Both seem to have been liberal advertisers in the same journals, which the record shows were such media as were likely to reach the owners of stock.

The evidence discloses somewhat overzealous business competition rather than unfair competition or fraud. There is shown no imposition upon nor complaint by the public with regard to the five decoy orders. It appears that no one was defrauded or deceived. The goods shipped to fill the same, while of similar packages to those of complainant, in shape, were plainly marked "SalTone," and carried in distinct form and colors the notice that they were made by the defendant, as did all defendant's other goods on the market. While the action of defendant in filling these orders was reprehensible as a business transaction, it did not amount to such a degree of unfairness or fraud as would justify penalization by the granting of the relief asked for by the bill. Throughout the record it appears that defendant always used its own name as proprietor, and the trade-mark of its product, "SalTone," and that the packages did not so closely resemble each other as to be misleading to one with any discriminating sense. The confusion, if it amounts to that, was brought about by the carelessness of purchasers, who appear to have been more anxious to procure a specific for the cure of animal diseases than to buy any particular preparation.

The facts do not bring the case within the rule obtaining in cases of unfair or fraudulent competition.

The decree of the District Court is affirmed.