### S. T. TAYLOR CO. v. NAST.

(Supreme Court, Special Term, New York County. July 26, 1915.)

TRADE-MARKS AND TRADE-NAMES &⟶69, 70—MAGAZINE TITLES.

Where plaintiff had published a fashion journal in the nature of a trade paper for more than 60 years under the title "Le Bon Ton," thus acquiring the right to a trade-mark in the words "Bon Ton," it was entitled to restrain defendant, despite defendant's want of fraudulent intent, from publishing a journal of the same character, so far as contents went, although differing entirely in its mechanical make-up, entitled "Gazette du Bon Ton."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 80, 81; Dec. Dig. &⟶69, 70.]

Action by the S. T. Taylor Company against Condé Nast. Plaintiff moves for an injunction pendente lite. Motion granted.

Cornell, Lockwood & Jeffery, of New York City (John L. Lockwood, of New York City, of counsel), for plaintiff.
Macdonald De Witt, of New York City, for defendant.

PHILBIN, J. The plaintiff moves to restrain the defendant pendente lite from publishing, selling, or advertising any magazine or periodical entitled or bearing as a part of said title the words "Bon Ton," or any word or phrase similar thereto, or from using said words, or similar words, in any manner in connection with any such magazine or periodical. The plaintiff and its predecessors have for upwards of 60 years published a periodical bearing the title "Le Bon Ton" (which was later changed by adding the subtitle "and Le Mon-

iteur de la Mode United") and treating with the styles and fashions in women's apparel. The said periodical has for a great many years been and is now popularly known simply by the name "Bon Ton." The defendant entered into an agreement with the publishers of a periodical published in Paris, and known as the "Gazette du Bon Ton," whereby it was agreed that the publishers should prepare and print a special issue of the said publication in the English language, and that the same should be sold to the defendant, who would be the sole American publisher thereof. The said Paris publication was also a periodical of the same general character, so far as the subject-matter was concerned, as the plaintiff's said magazine. Its publication has been suspended since the outbreak of the present war in Europe.

The cover of the said special issue intended to be offered for sale by the defendant uses the words "Bon Ton" in such a manner, in my opinion, as to fix the identity of the magazine by that title. The other words on said cover are either inconspicuous or so descriptive in their nature as not to form part of the title to the ordinary observer. The defendant had widely advertised the proposed publication of said magazine as the "Gazette du Bon Ton." . Such advertisement was also inserted in a periodical published by the defendant, and known as "Vogue," and which is somewhat similar in character to plaintiff's said publication. It contained a special appeal to the readers of "Vogue" on behalf of the new magazine. It also appears that the defendant likewise publishes other magazines, including two known as "Vanity Fair" and "Le Costume Royal," respectively, whose names would indicate a similarity in purpose to that of the plaintiff's periodical. It does not appear whether the said advertisement was also inserted in these last two publications. The two publications are essentially different in size, form, and type. The subject-matter is, as has already been stated, of the same general character. They seek the same class of patronage, advising as to the fashions affecting women's attire, and therefore possess the characteristics of trade papers. They also have certain features which appeal to the public generally. The advertisements contained in said magazine are likewise of the same general character, the publisher in each instance looking to the same classes of persons in the trade for such advertising.

The words "Bon Ton" have acquired a special and unusual meaning, as related to the plaintiff's magazine, because of their use for the long period covered by the existence of the latter. The arbitrary application to the said purpose is emphasized by the fact that they are not words of the English language, and to many persons convey no meaning except a designation of plaintiff's periodical, at least so far as publications are concerned. The meaning of the words themselves has also tended to make them appropriated. It would therefore appear that the plaintiff, having by its conduct for many years acquired a valuable trade-mark, should not have such value destroyed or impaired by its use by others for a like purpose, even if such use is confined to an isolated instance. Anything that tends to interrupt the continuity of the exclusive application of the words "Bon Ton"

by the plaintiff must be regarded as a distinct injury to the plaintiff, and one that cannot be measured by any estimate of money damage.

In my opinion the natural and probable tendency of the conduct of the defendant is to deceive the public, so as to pass off the said magazine to be published by him for the publication of the plaintiff. In view of the fact that the physical characteristics of the two publications, except in so far as the use of the words "Bon Ton" is concerned, are totally dissimilar, it may be questioned whether there has been sufficient proof given from which a fraudulent intent upon the defendant's part could be inferred. While the fact that the defendant is engaged in the publishing business, occupying in many respects a field similar to that occupied by the plaintiff, would justify such an inference, it is not necessary to rest whatever right the plaintiff has upon that theory. If the plaintiff has acquired the right to a trademark in the words "Bon Ton," as I think has been clearly shown, it is entitled to the relief sought. Gaines v. Leslie, 25 Misc. Rep. 20, 54 N. Y. Supp. 421. Under such circumstances, it is not necessary to establish fraudulent intent. Hier v. Abrahams, 82 N. Y. 519, 525, 37 Am. Rep. 589; Clinton M. P. Co. v. N. Y. & P. Co., 23 Misc. Rep. 66, 72. 50 N. Y. Supp. 437; Higgins Co. v. Higgins S. Co., 144 N. Y. 462, 471, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Gaines v. Leslie, supra.

The defendant cites the case of Commercial Advertiser Ass'n v. Haynes, 26 App. Div. 279, 49 N. Y. Supp. 938, as authority for the denial of this motion. The facts in that case were radically different. The word "Commercial" was one that was in common use, and frequently used in a descriptive sense. The matter contained in the two publications and the patronage sought were essentially different, one confining itself to financial, trade, and shipping news, and the other publishing the general news of the day. The title used in the Haynes Case had not attained that peculiar significance which the name "Bon Ton" has attained in relation to the plaintiff's magazine because of the existing circumstances. The similarity between the magazine so intended to be published by the defendant and plaintiff's publication is sufficiently patent to constitute a serious detriment to the latter. All that is necessary to sustain an injunction is that the imitation should be the same to the eye or to sound the same to the ear as the genuine trade-mark. Falk v. West Indian Trading Co., 36 Misc. Rep. 376, 377, 73 N. Y. Supp. 547, affirmed 71 App. Div. 320, 75 N. Y. Supp. 964. It is not necessary to prove that any person was actually deceived by the imitation, if it is apparent that there was every probability of such deception. Dutton Co. v. Cupples, 117 App. Div. 172, 176, 102 N. Y. Supp. 309; Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904.

The plaintiff properly invokes the protection of this court, and is entitled to the relief asked for on this motion. Motion granted.