Commercial Advertiser Association, Respondent, *v.* David O. Haynes, Doing Business under the Firm Name of D. O. Haynes & Co., Appellant.

*Action by " The Commercial Advertiser " to restrain the use of the name " New York Commercial " by another newspaper.*

In order that an injunction shall be granted to one newspaper to restrain another in the use of a title similar to the name of the former newspaper, the simulation must be such as is calculated to mislead the public, and consequently to injure the newspaper's circulation and patronage; if the simulation have such effect, it is immaterial that the name was innocently and conscientiously used.

Upon a motion made by a corporation which published a newspaper called *The Commercial Advertiser* to restrain the proposed publishing of a newspaper to be called the *New York Commercial,* it appeared that *The Commercial Advertiser* was a daily evening newspaper published in the city of New York, devoted to general news and sold at two cents a copy, while the *New York Commercial* was to be a daily morning newspaper published in the city of New York, devoted exclusively to commercial, financial, trade and shipping news and sold at five cents a copy, and that the two papers would be markedly dissimilar in their typographical arrangement and appearance.

*Held,* that the foregoing facts did not entitle the plaintiff to an injunction order restraining the defendant's use of the name *New York Commercial ;*

That the fact that *The Commercial Advertiser* was popularly known as the *Commercial* or *The New York Commercial* did not give a proprietary right to *The Commercial Advertiser* to the exclusive use of the word *Commercial* regardless of any question of the actual or probable injury occasioned to it from the use of the name *New York Commercial* by another paper.

Appeal by the defendant, David O. Haynes, doing business under the firm name of D. O. Haynes & Co., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of January, 1898, enjoining him from publishing any newspaper, the name and title of which shall be " New York. Commercial," or any newspaper containing the words " Commercial " or " New York Commercial," as a partial title, unless in such partial title the word " Commercial " is used as an adjective in connection with a substantive in such manner as not to imitate any name or title by which the plaintiff's newspaper is known.

The plaintiff is a domestic corporation. As such, it is the owner of a daily evening newspaper which is published in the city of New York under the name of *The Commercial Advertiser* and is

devoted to general news. The defendant is the president and principal stockholder of the Shipping and Commercial List Company, which is the proprietor of a weekly commercial and financial newspaper called *The Shipping and Commercial List and New York Price Current*, also published in this city. He now proposes to change this weekly to a daily newspaper and to change its name to *New York Commercial*, retaining, however, the title of the weekly paper in conspicuous letters immediately beneath this new name. He also proposes to place between the words "New York" and "Commercial," in the new title, a vignette representing a woman holding scales in one hand and a sword in the other. The exclusively commercial character of the weekly is to be retained and the new daily is to be sold for five cents per copy. It should be added that this proposed new daily is to be markedly dissimilar to the plaintiff's evening paper in type, heading, arrangement, character and reading matter, and that it appeals to an entirely different class of readers. Some of the details of these distinctive matters of difference are stated in the opinion.

*Arthur H. Masten*, for the appellant.

*William Williams*, for the respondent.

BARRETT, J.:

We find nothing in the affidavits presented by the plaintiff to warrant the conclusion of the learned justice at Special Term that: "The proofs seem to clearly establish that the name adopted by the defendant for his newspaper will lead to its being confused with the plaintiff's newspaper, and that injury to the plaintiff and deception upon the public will result." It may be that some slight confusion will arise until the character of the two publications is clearly understood by newspaper writers and advertisers. There can, however, be no confusion on the part of sane purchasers. This possible confusion on the part of newspaper writers and advertisers may cause some temporary inconvenience to both parties, but there is not a particle of evidence that it has caused or is likely to cause "injury to the plaintiff and deception upon the public." Indeed, the only injury inferable from the facts stated in the plaintiff's papers, is possible injury to the defendant. The plaintiff's president says that letters

and a telephone message intended for the defendant have been received by the plaintiff. He does not state, nor does he even intimate, that letters or messages intended for the plaintiff have miscarried or have been delivered to the defendant. He also says that orders for advertising intended for the plaintiff are frequently addressed to the *Commercial,* and that other journals throughout the country, in quoting from the plaintiff's paper, frequently give credit to the *New York Commercial.*

The only other attempt on the plaintiff's part to prove possible injury consists in mere expressions of opinion. Thus, Mr. James A. Hibson deposes to the probability of confusion arising out of the similarity of names and adds that "much business, especially advertising business, may thereby be lost to the *Commercial Advertiser.*" Mr. George P. Rowell also expresses the opinion that, as a result of such confusion, "advertisements intended for the *Commercial Advertiser* will very frequently reach the office of the new paper called the *Commercial.*" These opinions are combatted and more than met by opinions to the contrary effect, expressed by Messrs. Laffan, Lancaster, Criswell, Gordon and Hedge. These latter gentlemen say that there is no possibility of such confusion or of such pecuniary damage as the plaintiff claims, and their affidavits are controlling because of the undisputed facts which form the basis of their opinions.

These facts, as detailed by Mr. Laffan, are, in the main : That the differences in the physical appearance of the two papers are so marked and distinctive that no possibility for confusion would arise ; that the titles of the two papers are printed in type of different size and wholly dissimilar character ; that the type in the body of the two papers and the general typographical arrangement thereof are also different ; that the defendant's paper has, as part of its title, a large wood cut or vignette, while the plaintiff's has none ; that the character of the two papers is entirely different ; that the plaintiff's is an evening newspaper, which publishes the general news of the day and which is sold at two cents a copy, while the defendant's is a morning paper, which confines itself to commercial, financial, trade and shipping news and which is published at five cents a copy.

Upon these proofs, the case for an injunction is not nearly as strong as was that for the plaintiff in *Borthwick* v. *The Evening Post* (L. R. [37 Ch. Div.] 449), where an injunction granted by Mr. Justice KAY was reversed by the lords justices. The plaintiff there was the publisher of an old and established newspaper called *The Morning Post*. The defendants, who had acquired control of a newspaper called *The Daily Recorder*, proceeded to issue an evening paper which they called *The Evening Post*, adding in smaller type under this title the words, "with which is incorporated *The Daily Recorder*." There was some similarity between the printing of the name and the general typography of the two newspapers, and it appeared that several applications had been made at the office of *The Morning Post* for copies of *The Evening Post*. The lords justices reversed the injunction order upon the ground that there was no reasonable prospect of damage or injury to *The Morning Post*. Lord Justice COTTON summed the case up in these words: "In my opinion, in order to justify the court in granting an injunction, we ought to be satisfied that there probably will be injury to the pockets of the plaintiff. * * * There is only a suggestion of possible injury, and I think we ought not to act on that." Lord BOWEN said that he thought "a trick has been attempted by the new paper," but he concurred in the reversal upon the ground that *The Morning Post* was "not likely to be hurt." Lord Chief Justice COLERIDGE put his judgment upon the ground that there was no evidence "that, at least as regards *The Morning Post*, any damage has been inflicted."

Speaking of the application that had been made at the office of *The Morning Post* for copies of *The Evening Post*, he added: "There have been twenty applications, and twenty only, made to *The Morning Post* for copies of *The Evening Post*. * * * But it is not suggested — at least there is no evidence given of any kind — that a single copy less of *The Morning Post* has been sold than would have been if the defendants had not taken the action they have.

"Under those circumstances, it seems to me that there is not enough in this case to warrant the interference of the court by injunction."

The rule which governs in motions of the present character is well stated in this latter case. That rule is that while the court will

undoubtedly afford relief against such a simulation of the plaintiff's publication as is calculated to mislead the public and consequently to injure the newspaper's circulation and patronage, yet it will not interfere where no harm has been done to the plaintiff or is likely to be done to him by the publication complained of. The cases, both in England and in this country, are all one way as to this general principle (*Bradbury* v. *Beeton*, L. J. [39 Ch.] 57; *Ingram* v. *Stiff*, 5 Jur. [N. S.] 947; *Lee* v. *Haley*, L. R. [5 Ch. App.] 155; *Clement* v. *Maddick*, 5 Jur. [N. S.] 592; *Snowden* v. *Noah*, Hopk. Ch. 347; *Bell* v. *Locke*, 8 Paige, 75; *Talcott* v. *Moore*, 6 Hun, 106; *Stephens* v. *De Conto*, 4 Abb. Pr. [N. S.] 47; *Matsell* v. *Flanagan*, 2 id. 459; *Investor Pub. Co. of Mass.* v. *Dobinson*, 82 Fed. Rep. 56; *Richardson & Boynton Co.* v. *Richardson & Morgan Co.*, 8 N. Y. Supp. 53; *Farmers' Loan & Trust Co.* v. *Farmers' Loan & Trust Co. of Kansas*, 1 id. 44), and the real question here, therefore, is as to its applicability to the present facts. It is on this latter head alone that we differ with the learned justice below. We entirely agree with him that "the adoption of a name which, though not an exact imitation of the whole name used by the injured party, is calculated to deceive and mislead, may be enjoined." We find nothing, however, in the facts presented by the plaintiff to justify the conclusion that the adoption and use by the defendant here of the name *New York Commercial*, in the manner and under the circumstances disclosed, is calculated to deceive any purchaser or advertiser — to quote Vice-Chancellor MALINS, in *Bradbury* v. *Beeton* (*supra*) — "of common intelligence and observation."

The plaintiff's counsel also contends that its newspaper is popularly known as the *Commercial* or *The New York Commercial*, and that the courts, to quote the language of his brief, "protect the popular name as readily as they do the real name." Assuming the latter proposition to be correct, it does not aid the plaintiff. The fact that its newspaper in common parlance is known as the *Commercial* or *The New York Commercial*, may be a consideration bearing upon the question of actual or probable damage. It does not, however, of itself, give a proprietary right to the exclusive use of the adjective, regardless of any question of actual or probable injury to the plaintiff. In fact, the plaintiff does not claim the right

FIRST DEPARTMENT, FEBRUARY TERM, 1898.        [Vol. 26.

to enjoin *any use whatever* of the adjective *Commercial* in connection with newspaper publications. On the contrary, it frankly admits that the defendant cannot be restrained from naming his paper *The New York Commercial List* or *Commercial America.* It would seem to follow that even if the popular voice has given the plaintiff a property right in the popular phrase, yet the defendant cannot be restrained from naming his paper *New York Commercial,* unless his doing so misleads, or tends to mislead, the public to the actual or probable injury of the defendant. It is fundamental in all such cases that the plaintiff must show that deception is probable or he cannot succeed in obtaining the relief he seeks. (Sebastian on Trade Marks [2d ed.], 245.) If he shows such deception, actual or probable, and consequent injury, actual or probable, he is entitled to protection, even though his trade mark has been innocently and conscientiously made use of. So far we can freely go with the learned counsel of the plaintiff. But we cannot quite follow his reasoning when he contends that the public, by its short way of referring to *The Commercial Advertiser,* has given the plaintiff some kind of an undefined trade mark in this popular form of speech — a doctrine which would equally apply to a " soubriquet " or diminutive ; that such popular form of speech has thus become the plaintiff's " property," and that its unauthorized use by the defendant, *whether likely to injure the plaintiff or not, should be absolutely enjoined as an invasion of a strict property right.*

We think this position is fanciful and far fetched. It is certainly supported by none of the cases which he cites. And it ignores the fundamental doctrine upon which relief in this class of cases is afforded, namely, misleading, or the tendency to mislead, with consequent injury, actual or probable.

It follows that the order appealed from should be reversed, with ten dollars costs and the disbursements of the appeal, and the motion for an injunction denied, with ten dollars costs.

VAN BRUNT, P. J., RUMSEY, O'BRIEN and McLAUGHLIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion for injunction denied, with ten dollars costs.