(29 Misc. Rep. 10.)

COLONIAL DAMES OF AMERICA v. COLONIAL DAMES OF STATE OF NEW YORK.

SAME v. NATIONAL SOCIETY OF COLONIAL DAMES OF AMERICA et al.

(Supreme Court, Special Term, New York County. August, 1899.)

1. TRADE-MARKS AND TRADE-NAMES—SOCIETIES FORMED FOR PATRIOTIC ENDS—INFRINGEMENT OF NAME.

The rules governing the right to trade-marks and trade-names should not be applied with strictness to actions for infringement upon the right to an exclusive name between societies formed for patriotic and unselfish ends.

2. SAME.

Plaintiff is a society formed in 1890 for patriotic ends. Defendants are societies formed soon after, for similar purposes, and with names resembling plaintiff's. Plaintiff made no attempt to restrain defendants from using the names they adopted until several years after their organization, when they each had acquired large membership, and there appears to have been no confusion as to the identity of the several societies, except miscarriage of mail. *Held,* that plaintiff is not entitled to injunctions restraining defendants from further use of their several names.

Separate actions for injunction by the Colonial Dames of America against the Colonial Dames of the State of New York, and against an unincorporated association called the National Society of the Colonial Dames of America, and Justine Van Rensselaer Townsend, as its president. Judgment for defendants.

Franklin Bartlett, for plaintiff.

Bowers & Sands (L. G. Reed, of counsel), for defendants.

BOOKSTAVER, J. These two actions, tried and argued as one, are brought by the plaintiff corporation, the Colonial Dames of America, respectively, against another New York corporation, the Colonial Dames of the State of New York, and an unincorporated association called the National Society of the Colonial Dames of America, and the relief sought in each case is a permanent injunction restraining the defendants from continuing to use the names severally adopted by them, on the ground that such names are substantially the same as the name of the plaintiff, and constitute an infringement upon the plaintiff's right to the exclusive use of that name.

The circumstances concerning the origin of the three organizations, so far as it is necessary to refer to them, are as follows: In the spring of 1890 a group of ladies in the city of New York formed an unincorporated society for the purpose of promoting the study of the colonial days of the country, and of perpetuating the memory of the men and events of those times, and of protecting and preserving any relics, whether buildings or writings or of some other character, still surviving from that period. After some discussion, the name Colonial Dames of America was adopted as a suitable designation of the society so formed, membership in which was limited to women descended from ancestors living in this country during the colonial period. By April, 1891, several ladies of Philadelphia had become members of this society, a Pennsylvania

chapter having been inaugurated. On April 8, 1891, another so-
ciety, similarly constituted and for similar purposes, was organized
in Philadelphia, and adopted the name the Pennsylvania Society of
Colonial Dames of America. Overtures were promptly made by the
Pennsylvania society to the New York society for a union upon
the basis of independent state organizations, which should, after
a sufficient number had been formed, unite into a national society.
The New York society held aloof from that proposal, however, and
proceeded at once to incorporate under the laws of this state. The
Pennsylvania society continued, and succeeded in its plan of form-
ing a national society, which society is the defendant in one of
these actions, and is called the 'National Society of Colonial Dames
of America. At the present time it has branches in 35 different
states, and numbers over 4,000 members. Meanwhile, and in April,
1893, the other defendant, the Colonial Dames of the State of New
York, was incorporated, and already numbers over 500 members.
The plaintiff has a membership of about 300.

At the outset it should be noted that this case is unique, in that
none of the parties is engaged in any business, in the sense of
seeking financial gain. On the contrary, all are equally seeking to
accomplish patriotic and unselfish ends. It is therefore obvious that
the rules governing the right to trade-marks and trade-names,
evolved, as those rules have been, from selfish attempts on the part
of one person to appropriate for his financial benefit what right-
fully belongs to another, and decisions of courts in thwarting such
attempts, do not apply to such a case as this, or, at any rate, ought
not to be applied with the same strictness.

Keeping in mind the distinction just pointed out, the following
facts are important, and, to my mind, controlling, in this case:
The plaintiff, with full knowledge, has stood by for all these years,
and made no attempt to prevent the defendants from using the
names they have severally adopted. They have gone on increasing
in membership, and enlarging the field of their operations. Some
idea of the importance of the work done by them can be derived
from the fact that, through the instrumentality or initiative of the
Rhode Island branch alone of the one defendant, a sum exceeding
$21,000 was raised and spent for the relief of our soldiers during
the recent Spanish war; while the other defendant has, since its
organization, and for various purposes, collected and disbursed a
still larger sum. There may be some significance, moreover, so
far as one of the defendants is concerned, at least, in the circum-
stance that, after the plaintiff was incorporated in this state, its
own certificate of incorporation was accepted and filed by the sec-
retary of state, there being at the time a statute prohibiting the
filing of a certificate of incorporation of any corporation having
the same name as an existing corporation, or a name so nearly re-
sembling it as to be calculated to deceive. However that may be,
there certainly is some significance in the fact that the legislature
of the state, by chapter 837 of the Laws of 1896, recognized not only
the existence, but the name, of the same defendant, by authorizing
the department of parks of this city to intrust to it the Van Cort-

landt Mansion, in Van Cortlandt Park. In pursuance of that authority, the property was leased to the society for a long period, and is now under its control and care. Another important consideration telling in favor of the defendants is found in the fact that there is no proof that any one has ever joined either of them in mistake for the plaintiff, or has been otherwise deceived or seriously confused as to the identity of the three societies, and, from the nature of the case, it seems hardly possible that any such mistakes can ever accrue, to an important extent, at least. There has been, it is true, some miscarriage of mail, many letters intended for the defendant the Colonial Dames of the State of New York having been, in the first instance, delivered to the plaintiff. It is denied, however, that any of plaintiff's mail has ever been delivered to the defendant. Under such circumstances, the plaintiff has no grievance. Association v. Haynes, 26 App. Div. 279, 49 N. Y. Supp. 938.

If this were a controversy between ordinary business concerns, and to be determined strictly in accordance with precedents, there would still be a serious doubt as to the plaintiff's right to an injunction. In Hygeia Water Ice Co. v. New York Hygeia Ice Co., 140 N. Y. 94, 35 N. E. 417, the court, under the particular facts of that case, refused to restrain the defendant from the further use of its name, although the similarity there was, in my opinion, fully as great as it is here. But, as before said, this is not a case to be tested strictly by the ordinary class of authorities, and therefore no further reference will be made to such authorities. Reasons which may be all-sufficient to induce a court to restrain a defendant from making money that a plaintiff is entitled to make may be wholly inadequate to warrant such interference where it is a question of doing good deeds. In such a case the public welfare will not be conserved by too great astuteness in recognizing the exclusive rights that sometimes are accorded to priority. The work as well as the workers should be considered, and chiefly considered, because it is more important that philanthropic work should be done than that any particular person should have the gratification of doing it.

In this case I certainly shall not attempt to tie the hands of any of the parties. If there is any advantage in the peculiarly suitable appellation "Colonial Dames," let them all have that advantage. If they cannot see their way to a composition of their differences and to a union, or if they think they can do better acting separately, so be it. I will not lay a straw in the way of any of them, but rather wish them all Godspeed and the fullest measure of success in their good efforts. Judgment for the defendant in each case, but without costs.

Judgment for defendant in each case, without costs.