WHALEN v. NEW YORK & S. I. ELECTRIC CO.

(Supreme Court, Appellate Division, Second Department.    July 25. 1901.)

BAILMENT—NEGLIGENCE OF BAILEE—QUESTION FOR JURY.

In an action for the value of a horse, which defendant hired and returned the following morning in a dying condition, plaintiff testified that the horse had not been properly cared for, and the veterinary who treated him testified that the disease was caused by "overfeeding, giving water when overheated, fast driving, and ill-treatment," and that the horse might have been saved had it been properly treated when its condition was discovered, instead of being removed without treatment from defendant's to plaintiff's barn on a cold night.    *Held*, that the question of defendant's negligence should have been submitted to the jury.

Goodrich, P. J., dissenting.

Appeal from municipal court of city of New York.

Action by John Whalen against the New York & Staten Island Electric Company.    From a judgment entered on a verdict directed for the defendant, plaintiff appeals.    Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

W. J. Powers, for appellant.
M. L. Ryan, for respondent.

HIRSCHBERG, J.    The disposition of this case in the court below was clearly erroneous.    The court directed a verdict for the defendant, and the judgment entered thereon cannot stand if there is any evidence requiring a submission to the jury.    In determining that question, the plaintiff is entitled to have that view of the evidence adopted which is most favorable to him.    The action is brought to recover damages for the alleged wrongful acts of the defendant in the abuse of a horse belonging to the plaintiff, which the defendant hired, and returned in a dying condition.    The occurrence was on January 6, 1900.    The horse was hired and taken from plaintiff's stable by two of defendant's servants at about half-past 7 o'clock in the morning.    There is no pretense even that he was not then in perfect condition.    He was brought back to the plaintiff's stable at 2 o'clock the next morning by some of the defendant's servants, who disappeared when the stable door was opened.    The horse ran into the stable, and fell upon the floor.    Veterinary aid was summoned at once, but, in spite of persistent treatment and attention, the animal died at 5 o'clock on the afternoon of January 7th.    The plaintiff testified that the horse was hired for the day only, and was to be returned to his stable that night, viz. the night of the 6th.    One of the defendant's two men who did the hiring testified that nothing whatever was said about when the horse was to be returned, while the other man did not testify on the subject at all.    As a matter of fact, after being driven all day, the horse was placed at night in the defendant's stable, and, when he was found at 2 o'clock the next morning to be in an apparently dying state, was taken, without care or treatment, to the plaintiff's stable, and left there in the manner stated.    The plaintiff testified that when the horse was returned to him he had not been properly cared for.

71 N.Y.S.—38

The veterinary surgeon who treated him testified that the horse died from a "sudden attack of colic, running into inflammation of the bowels, due to improper feeding or watering." He stated that the causes of the disease were "overfeeding, giving water when overheated, fast driving, ill-treatment"; and, further, that in his opinion, if the animal had received proper care and treatment when first observed to be ill, he could have been saved. On behalf of the defendant, evidence was given by the man who drove the horse that day, and by his companion, that he was driven in moderation, carefully fed and watered, and that he exhibited no indication of indisposition when placed in defendant's stable for the night. It was conceded, however, that when he was taken sick no aid was summoned, and that nothing whatever was done to relieve his sufferings. A veterinary surgeon called by the defendant testified that overfeeding, giving a drink when warm, and fast or overdriving would cause inflammation of the bowels; that it was not proper treatment of the horse to take it from one stable to the other in its condition on a cold morning, but that that, of itself, would not necessarily cause the horse's death.

It can scarcely be disputed that upon these facts the case was for the jury, and should not have been disposed of by the magistrate as presenting only a question of law. If the jury believed the plaintiff as to the tenure of the bailment, the defendant's act in retaining the horse overtime amounted to a conversion, and rendered it liable without further fault. But, independently of that question, the interest of those who testified to their good treatment of the horse required that their credibility be submitted for the jury's consideration, and prevented their evidence from overcoming, as matter of law, the strong and natural inferences of neglect and ill-treatment which flow from the absolutely undisputed facts herein detailed. The judgment appealed from should be reversed, and a new trial ordered; costs to abide the event. All concur, except GOODRICH, P. J., who dissents.