SALVATION ARMY IN UNITED STATES v. AMERICAN SALVATION ARMY.

(Supreme Court, Special Term, New York County. December 8, 1908.)

1. CORPORATIONS (§ 49*)—CORPORATE NAMES—USE OF SIMILAR NAME BY OTHERS.

The name "The Salvation Army in the United States," a corporation in affiliation with the Salvation Army in England and subject to the control of its founder, and the name "The American Salvation Army," a corporation not governed by any foreign power, are not similar, and the former cannot maintain an action to restrain the latter from using its name.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. § 49.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 67*) — UNFAIR COMPETITION — INJUNCTION.

While equity will enjoin unfair competition, it will be reluctant, except in a clear case, to award an injunction against a religious organization

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

though its name and methods bear some slight resemblance to another religious body.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 67.*]

3. EQUITY (§ 67*)—LACHES.

Equity will withhold relief where the person asserting a grievance has not exercised reasonable diligence in seeking redress.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 191; Dec. Dig. § 67.*]

4. TRADE-MARKS AND TRADE-NAMES (86*)—INJUNCTION—LACHES.

Where, for 25 years, various religious bodies other than plaintiff or its predecessor used the words "Salvation Army" as part of their title and were engaged in the same work to which plaintiff was devoted, and the newspapers published by the various bodies during the entire period used the words "War Cry" as a part of their titles, plaintiff could not because of laches sue to restrain the use of the name "Salvation Army" and the name "War Cry."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 95; Dec. Dig. § 86.*]

Action by the Salvation Army in the United States against the American Salvation Army. Complaint dismissed.

Frederick W. Garvin, for plaintiff.

Wilson Lee Cannon, for defendant.

SEABURY, J. This action is brought to restrain the defendant corporation from using the name "The American Salvation Army" and from publishing a paper called "American Salvation Army War Cry." Both parties are religious corporations pursuing substantially the same methods in the conduct of their work. The plaintiff is incorporated under chapter 468, p. 953, of the Laws of 1899 of the state of New York, and is in affiliation with the Salvation Army movement instituted by Gen. William Booth in England in 1878. It is sometimes spoken of in this country as the "Booth Salvation Army." From 1880 to 1884 representatives of Gen. Booth were engaged in introducing the work of the Salvation Army in the United States. In the latter year most of the workers in this country withdrew from the Booth movement, formed an independent organization, and as early as October 24, 1884, became incorporated under the laws of the state of New York under the name of "The Salvation Army." On March 19, 1885, the same persons reincorporated under the laws of the state of New York as "The Salvation Army of America." The leader in this movement, one Moore, had been in charge of the Booth movement, and seceded therefrom because of Gen. Booth's unwillingness to have the Salvation Army incorporated in the United States, the parent organization in England being unincorporated. In 1888 there were withdrawals from the so-called Moore movement, and for upwards of a year thereafter the seceders, under one Holz, conducted an unincorporated, independent movement in this country known as "The American Salvation Army." In 1889 Holz returned to the Booth organization, and on January 14, 1891, one Grattan and his followers, who had been connected with the earlier movements, incorporated under the laws of the state of New

York under the name of "The American Salvation Army." Although Grattan retired in 1893, "The American Salvation Army" organized by him had a few posts in the state of Pennsylvania, where desultory work of a religious nature was carried on from time to time. On August 27, 1896, the persons then engaged in that movement in Pennsylvania, under the leadership of one Duffin, now the principal officer of the defendant corporation, obtained from the common pleas court in Dauphin county, Pa., the first charter of the defendant, "The American Salvation Army." Since that time the defendant has operated continuously under its corporate name, and has published from time to time the American Salvation Army War Cry. In 1897 the defendant transferred its headquarters to the city of Philadelphia, in the state of Pennsylvania, and in April, 1900, reincorporated in that city under the same title acquired by the 1896 charter. The plaintiff complains that the defendant corporation was organized with the intent to deceive and defraud the public and contributors of money to religious, charitable, and benevolent work, and with the especial intent to obtain a portion of the voluntary contributions and donations intended for the religious, charitable, and benevolent work of the plaintiff corporation, and that owing to the similarity of title the defendant has succeeded in those purposes. The evidence does not support this claim. The names "The American Salvation Army" and "The Salvation Army in the United States" are not similar. The difference is not fanciful, but substantial. The plaintiff corporation is a part of an organization whose activities are international, and, as its name indicates, it is that part of the Salvation Army of England operating in the United States. The work of the organization in the United States is managed by five trustees, three of whom are nominated by Gen. Booth in the exercise of his general authority, and are subject to removal by him. These three trustees so named by Gen. Booth may appoint the other two members of the board, but the power of removal exercised by Gen. Booth abroad confers upon him supreme control in the management and operation of the plaintiff, although he is not an officer of the corporation. In article 3 of the constitution of the defendant corporation it is declared that the defendant the American Salvation Army "is, and must ever be, an American institution, recognizing the spirit and justice of the Constitution of the United States, and it is not, and never shall be, controlled or governed by any foreign power." Whatever resemblance there may be in the names is not calculated, in my opinion, to mislead or deceive persons of common intelligence and observation, and therefore it cannot be held that plaintiff's business interests are likely to suffer injury. In re Greene, 9 App. Div. 223, 41 N. Y. Supp. 177, affirmed 150 N. Y. 566, 44 N. E. 1124; Farmers' Loan & Trust Co. v. Farmers' Loan & Trust Co. of Kansas, 21 Abb. N. C. 104, 1 N. Y. Supp. 44; Commercial Advertising Ass'n v. Haynes, 26 App. Div. 279, 49 N. Y. Supp. 938; Hygeia Water Ice Co. v. N. Y. Hygeia Ice Co., 140 N. Y. 94, 35 N. E. 417; Employers' Liability Assur. Corp'n v. Employers' Liability Ins. Co. of United States, 24 Abb. N. C. 368, 10 N. Y. Supp. 845; Colonial Dames of America v. Colonial Dames of State of New York, 29 Misc. Rep. 10, 60 N. Y. Supp. 302, affirmed 63 App. Div. 615, 71 N. Y. Supp. 1134, 173 N. Y. 586, 65 N. E. 1115. In the Matter of Greene,

supra, it was held that the words "National Democratic Party" are not substantially the same as "The Democratic Party," although the latter party is a national and not a local organization. In Farmers' Loan & Trust Co. v. Farmers' Loan & Trust Co. of Kansas, the court held that the words "of Kansas" in the defendant's title made the names dissimilar. The instances of alleged deceit on the part of certain of defendant's followers or employés, complained of by the plaintiff, do not appear to have received the sanction or approval of the defendant or its responsible officers, and the possible diversion of donations intended for the plaintiff corporation can be easily avoided by intelligent discrimination on the part of the donors. The claim that the alleged moral delinquencies of some of the defendant's followers may cast reproach upon the plaintiff's movement is unfounded. The practice and cultivation of those religious principles which are professed by both parties to this controversy, and the influence for good which both bodies are capable of exerting, will minimize, if not entirely abate, this evil, if it exists. A court of equity will promptly enjoin unfair competition in trade and business (Higgins v. Higgins, 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769), but will be reluctant, except in a clear case, to permit its intervention to impede and restrain an organization devoted to religious endeavor merely because in its name and methods it bears some slight resemblance to another religious body. In any aspect of the case the plaintiff's long acquiescence in defendant's use of the name sought to be enjoined must preclude a recovery. Equity will withhold relief where the person asserting a grievance has not exercised reasonable diligence in seeking redress. Calhoun v. Millard, 121 N. Y. 69–81, 24 N. E. 27, 8 L. R. A. 248. It is apparent that since 1884, a period of 25 years, various religious bodies other than the plaintiff or its predecessor, using the words "Salvation Army" as part of their title, have been engaged in this country in the same work to which the plaintiff is devoted. Several of these bodies, if not all, were incorporated before the plaintiff. In this case the delay of many years is also significant as indicating that the supposed similarity of names and methods was not regarded by the plaintiff as likely to cause confusion or as being prejudicial to its interests. The newspapers published by these various bodies during all this period have used the words "War Cry" as part of their titles. Although the words "War Cry" were originally selected by Gen. Booth in London previous to 1880, the title "War Cry" was copyrighted in this country by Moore, the leader of the first independent movement, in his own name, as early as 1884, and until the institution of this action no attempt has been made by the plaintiff or its predecessor to restrain the use of the words "War Cry" or "Salvation Army," although during all the time in question the plaintiff or its predecessor had knowledge of such use and appropriation of these words. Under the authorities cited, "War Cry" and "American Salvation War Cry" must be held to be dissimilar, and not calculated to cause confusion or to subject the plaintiff to pecuniary injury.

The plaintiff is not entitled to the relief sought, and the complaint must be dismissed, with costs.