Hotel Syracuse, Inc., Respondent, *v.* Motel Syracuse, Inc., Appellant.

Fourth Department, January 6, 1954.

*Jerome H. Searl* for respondent.

*Saul H. Alderman* for appellant.

VAUGHAN, J. Following a trial at an Equity Term of the Onondaga Supreme Court, plaintiff-respondent, Hotel Syracuse, took judgment enjoining and restraining defendant-appellant, Motel Syracuse, from using such name in connection with its business activities. We are called upon to review said judgment.

Plaintiff-respondent is the owner of the Hotel Syracuse, a typical city hotel enjoying an excellent reputation. The hotel is situated in the heart of downtown Syracuse close to the common carrier terminals. Plaintiff employs a full time publicity department.

Defendant was incorporated in 1951, and has constructed a rather elaborate motel on Route 5, one mile east of the Syracuse city limits in the town of DeWitt. This is about four miles from plaintiff's hotel. The postal address is East Syracuse. The motel consists of five one- and two-story brick veneer buildings arranged in the form of a court with parking facilities adjacent to each unit. There is not the slightest physical similarity between the motel and plaintiff's business.

Defendant has done little advertising, but has erected on its premises a large neon sign bearing the words " Motel Syracuse ". Plaintiff's counsel wrote to defendant protesting the choice of the name " Motel Syracuse " on the ground that its similarity to " Hotel Syracuse " would produce confusion. On the trial, in support of this contention, it was proved that plaintiff has received one card and three letters addressed to Motel Syracuse. Plaintiff also received one bill addressed to plaintiff but intended for defendant. The bill was improperly posted from the voucher. Another bill addressed to the motel reached the hotel through the error of the postman. Defendant has received none of plaintiff's mail. On one occasion a guest with reservations at the motel mistakenly went to the hotel and was directed to defendant.

The law of trade names is but part of the broader law of unfair competition, the general purpose of which is to prevent one person from passing off his goods or his business as the goods or the business of another (*American Foundries* v.

*Robertson,* 269 U. S. 372). " Whether the court will interfere in a particular case must depend upon circumstances; the identity or similarity of the names; the identity of the business of the respective corporations; how far the name is a true description of the \* \* \* business carried on; the extent of the confusion which may be created or apprehended, and other circumstance[s] which might justly influence the judgment of the judge in granting or withholding the remedy." (*Higgins Co.* v. *Higgins Soap Co.,* 144 N. Y. 462, 469–470.) Confusion of the public and damage to the plaintiff are the gist of the action (*Hotel Claridge Co.* v. *George Rector, Inc.,* 164 App. Div. 185). In the absence of damage, inconvenience or annoyance is insufficient. " Courts of equity must, in such cases, assume that the public will use reasonable intelligence and discrimination with reference to the names of corporations with which they are dealing or intend to deal, the same as in cases of individuals bearing the same or similar names. It is timely enough in such cases for equity to use its extraordinary powers when it appears that deception or confusion has in fact resulted from the use of a word or a name or when it clearly appears that such result is likely to follow." (*Hygeia Water Ice Co.* v. *New York Hygeia Ice Co.,* 140 N. Y. 94, 98.)

The improbability of confusion explains the rule that there can be no proprietary right in descriptive or geographical words or names, so long as their appropriation has not the effect of deception (*Corning Glass Works* v. *Corning Cut Glass Co.,* 197 N. Y. 173, 178). Plaintiff concedes that " Syracuse " is a geographical term, but contends that it has acquired a secondary meaning as referring to plaintiff's hotel. The trial court adopted plaintiff's contention and concluded that when coupled with the word " hotel ", the word " Syracuse " has a secondary meaning. Of course " Hotel Syracuse " refers solely and primarily to plaintiff, but that is not the name chosen by defendant. The theory of the secondary meaning simply " contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, because geographically or otherwise descriptive, might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trade-mark." (*Merriam Co.* v. *Saalfield,* 198 F. 369, 373, Dennison, J.) A reference to the cases in which a secondary meaning has been found should

render this point clear. (1 Nims on Unfair Competition and Trade-Marks [4th ed.], p. 292; *Oneida Community, Ltd.,* v. *Oneida Game Trap Co.,* 168 App. Div. 769; *Thum Co.* v. *Dickinson,* 245 F. 609; *Newman* v. *Alvord,* 51 N. Y. 189; *Brooklyn White Lead Co.* v. *Masury,* 25 Barb. 416.)

The existence of a secondary meaning is, of course, largely a question of fact in each case, and while there is no question that plaintiff enjoys an excellent reputation, we find in this record no convincing evidence that "Syracuse" has acquired a secondary meaning or that its use tends to confusion. In any event the confusion must be reasonable, for "the law does not justify interference in behalf of ignorant, or careless, persons." (*Corning Glass Works* v. *Corning Cut Glass Co.,* 197 N. Y. 173, 180, *supra.*) We believe the evidence here relied upon as showing "confusion" was largely the result of carelessness in posting and in delivering mail. The same care must be exercised as in the case of two natural persons with similar names.

In connection with the problem of confusion, the courts have stressed certain factors:

(1) Similarity of the businesses involved has a strong bearing on the probability of confusion (*Commercial Adv. Assn.* v. *Haynes,* 26 App. Div. 279). The record in this case reveals a marked dissimilarity in the manner in which the parties conduct their respective businesses. Defendant caters almost exclusively to the motoring trade and can expect little or none from travelers on the common carriers. The distinction between a "hotel" and a "motel" is firmly established in the mind of any reasonable person.

(2) Confusion of mail. The confusion in this case seems insignificant when it is realized that plaintiff receives from 300 to 400 pieces of mail every day. Further, there is no evidence that any of plaintiff's mail has arrived at the motel, and it has been said many times that plaintiff has no grievance if none of its mail has gone astray (*Colonial Dames of America* v. *Colonial Dames of N. Y.,* 29 Misc. 10, affd. 63 App. Div. 615, affd. 173 N. Y. 586). An injunction was denied in *Richardson & Boynton Co.* v. *Richardson & Morgan Co.* (55 Hun 606) which is a much stronger case, for mail was misdelivered both ways and in busy times mistakes occurred daily as to plaintiff's locality.

(3) Justification for defendant's choice of name. It is always pertinent to inquire whether there is any apparent justification for defendant's choice of name; in its absence an intent to deceive may be inferred (*Tiffany & Co.* v. *Tiffany Productions,*

147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482). There is no claim that defendant selected its site in order to capitalize on plaintiff's good will, which was the fact in *Oneida Community, Ltd., v. Oneida Game Trap Co.* (168 App. Div. 769, *supra*). It is true that defendant's motel is not located within the city limits of Syracuse, but its postal address is East Syracuse and its president is a Syracusan. Naturally it is important for a businessman — particularly one who deals with motorists traveling from town to town on our highways — to fix his location in the public mind. No name does this more effectively than a geographical name. Its selection cannot be termed unjustified on this record.

We reach the conclusion that the judgment appealed from should be reversed. As was said in the *Buffalo Typewriter* case (*Buffalo Typewriter Exch.* v. *McGarl,* 240 N. Y. 113, 116) : '' There is no finding, nor is there any satisfactory proof, that the defendants, by the adoption of the name American Typewriter Exchange * * * or the use of the stationery deceived or misled any one. There is no finding, nor is there any proof which would sustain one if made, that the defendant ever misrepresented to its customers that they were dealing with the plaintiff. It would be difficult indeed to find a case of alleged unfair trade competition where the record is as barren of any evidence of fraud, false representation or unfairness, as the one now under consideration.''

The judgment appealed from should be reversed, and the complaint dismissed.

All concur, except McCURN, P. J., who dissents and votes for affirmance.

Present — McCURN, P. J., VAUGHAN, KIMBALL, PIPER and WHEELER, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.