A.L.M.N., INC., a NEVADA CORPORATION, DBA LA MIRAGE HOTEL & CASINO; ROBERT L. MAYER, TRUSTEE OF THE ROBERT L. MAYER TRUST OF 1982, DATED JUNE 22, 1982; ROBERT L. MAYER, INDIVIDUALLY, APPELLANTS, v. ALLEN H. ROSOFF, MARY E. ROSOFF, AND BETTY ROSOFF, CO-PARTNERS, MIRAGE MOTEL/MIRAGE HOTEL, RESPONDENTS.

No. 18189

June 24, 1988 757 P.2d 1319

---

*Lionel, Sawyer & Collins* and *Charles H. McCrea, Jr.*, Las Vegas, for Appellants.

*Rudiak, Oshins, Segal & Larsen* and *Monte Hall,* Las Vegas, for Respondents.

276

## OPINION

*Per Curiam:*

### The Facts

Respondents Rosoffs own and operate the Mirage Motel, a forty-six-unit motel with a pool and approximately eight employees. The Rosoffs have operated the Mirage Motel under the same name since 1953.

In October, 1985, Robert Mayer registered, with the Secretary of State, the tradename "La Mirage Hotel and Casino" for his business, previously known as the Ambassador Inn. At that point, Rosoffs' tradename "Mirage Motel" was not registered with the Secretary of State. Appellant A.L.M.N. apparently began leasing "La Mirage" from Mayer's trust and refurbished the business, ordering signs, chips, stationery, and hotel supplies bearing the name "La Mirage." By January 1, 1986, A.L.M.N. had entered into contracts for such goods and services and had invested a significant amount of money in items bearing the name La Mirage. The La Mirage Hotel and Casino is a 320-room hotel and casino, employing approximately 250 people.

In early January 1986, the Rosoffs began noticing that some people, including customers, were confusing the two businesses.

They sent a letter to A.L.M.N., suggesting it cease using the name La Mirage, but A.L.M.N. declined the suggestion. On January 14, 1986, the Rosoffs registered their tradename "Mirage Motel/Mirage Hotel" with the Secretary of State. In February, they sued appellants, alleging, among other causes of action, common law tradename infringement.

The Rosoffs sought summary judgment on their infringement claim. The district court granted the motion, concluding appellants were liable for damages because they had infringed the Rosoffs' tradename. After filing its initial order, the court amended it, adding a permanent injunction enjoining appellants from using the word "Mirage" in any advertising. Appellants obtained a stay of this injunction and appealed the order.

*Discussion*

The initial issue to be decided is what standard of review governs this appeal. A.L.M.N. argues that a summary judgment standard of review applies: whether the lower court erred in granting the motion because a genuine issue of material fact existed, assuming evidence most favorable to the non-moving party to be true. The Rosoffs, however, argue that because the lower court conducted a "trial by affidavit" and granted a permanent injunction, we merely need to examine the record to determine whether the lower court abused its discretion in making its decision.

We are convinced, however, that the court based its decision to grant permanent injunctive relief on its initial conclusion that summary judgment was appropriate. The court first granted the summary motion, and later amended its summary judgment order to include the permanent injunction as a remedy. Because the court's permanent injunction is based on a legal determination that summary judgment could properly be granted under the circumstances, we conclude the proper standard of review is that for summary judgment, and not merely whether the court abused its discretion. *See* Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1253 (9th Cir. 1982) (summary judgment standard of review appropriate for trade mark dispute when district court granted summary judgment and permanent injunction). Therefore, we must decide—assuming evidence favorable to A.L.M.N. as true—whether the district court erred by concluding, on summary judgment, that A.L.M.N. infringed the Rosoffs' tradename.

Common law tradename infringement falls within a broader category of prohibited unfair competition. "At the heart of [cases alleging] trademark infringement . . . are two questions: Has a protectable right been created? Has it been infringed?" beef &

brew INC. v. BEEF & BREW, INC., 389 F.Supp. 179, 184 (D.Ore. 1974). Our review focuses on these two issues.

Whether, and to what extent, a tradename is protectable depends on its distinctiveness and strength.[1] 1 J. McCarthy, *Trademarks and Unfair Competition* §§ 11:1, 11:24 (2nd ed. 1984) (hereafter McCarthy). In this case, the lower court concluded:

> Plaintiffs have used the names "Mirage Motel/Mirage Hotel" for more than thirty-three (33) years as the tradename of their motel at 4613 Las Vegas Boulevard South, Las Vegas, Nevada, and have thereby established that name as their common law tradename.

A.L.M.N. contends, however, that even though the Rosoffs used the name "Mirage Motel" for over thirty years,[2] a material issue of fact exists about whether this name is entitled to protection.

Courts have developed the following litmus test to help measure a tradename's distinctiveness. Tradenames are divided into four categories: generic, descriptive, suggestive and arbitrary/fanciful. Suggestive and arbitrary names, considered distinctive, are afforded legal protection against infringement. However,

---

[1] One reason a distinctive tradename is protected, but a non-distinctive tradename is not, is that a distinctive tradename assumedly attains a greater public recognition and awareness of the service it represents. As a result, the senior user is entitled to protection against others who attempt to usurp this recognition or otherwise confuse customers.

[2] Because the right to a corporate name arises from prior use, the fact that A.L.M.N. registered its tradename first is irrelevant in determining whether the Rosoffs' tradename is entitled to protection. First registration provides no absolute protection against an action for common law tradename infringement. As McCarthy notes:

> The reality of the trademark world is that one who commences use of a new mark is in somewhat the same position as a squatter who starts building a cabin (which the builder hopes will someday evolve into a palace) on a vacant city lot. When sued as a trespasser and facing an injunction to tear down the structure, it rings hollow for the squatter to argue that, "But I didn't know somebody owned that land." The obligation is to check out possible conflicts before investing time and money in a new mark.

McCarthy, *supra,* at § 23:21. *See also* Comment, *Utah's Business Name Statutes: "An Open Invitation to Litigation",* 1983 B.Y.U. L. Rev. 795, 795 ("[S]ecretary of State approval has little if anything to do with acquiring business name rights.") (Footnote omitted.)

generic names, considered non-distinctive, are not. Descriptive tradenames are protected only if secondary meaning[3] is proved.

An arbitrary tradename has been defined as one in "common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality, or characteristic of those goods and services." McCarthy, *supra,* at § 11:4. The Rosoffs argue MIRAGE Motel is clearly an arbitrary tradename, and therefore no issue of fact exists about whether it is protected. The district court agreed.

On appeal, however, A.L.M.N. argues that MIRAGE Motel could be considered: (1) a descriptive tradename, or (2) a weak suggestive name. It argues that the word MIRAGE alludes to a desert, thus describing or suggesting the business's geographical situs. A.L.M.N. argues that the correct categorization of a tradename—whether a name is descriptive or arbitrary—is a genuine issue of material fact, mandating a trial. A.L.M.N. also notes that if the name is considered descriptive, the Rosoffs must show that it has secondary meaning before it is entitled to protection, which is also a factual determination. Both latter assertions are accurate general statements of the law.[4]

A geographically descriptive tradename has been defined as one "which designates geographical location and would tend to be regarded by buyers as descriptive of the geographic location or origin of the goods or services."[5] McCarthy, *supra,* at § 14:2. As

---

[3]Secondary meaning has been described as "consumer acceptance and recognition of [a descriptive trade name] as denoting only one seller or source." McCarthy, *supra,* at § 11:9.

[4]The categorization of a tradename is normally a factual determination. *E.g.,* WSM, Inc. v. Hilton, 724 F.2d 1320, 1326 (8th Cir. 1984) (citing 3 Callman, *The Law of Unfair Competition, Trademarks and Monopolies* 66 (Supp. 1982)); McCarthy, *supra,* at § 11:1 n.6. However, on occasion, when there can be no genuine dispute about the category of a tradename, courts have determined, on summary judgment, the category of a tradename or mark. *E.g.,* Gimex, Inc. v. JS & A Group, Inc., 699 F.2d 901 (7th Cir. 1983); Team Cent. Inc. v. Xerox Corp., 606 F.Supp. 1408 (D.Minn. 1985).

[5]McCarthy suggests that questions such as the following help determine whether a tradename is geographically descriptive:

 1. Is the business name the place or region from which the goods or services are produced or exist?
 2. Is the geographic term likely to denote to reasonable customers that the goods or services are produced or offered in the region or place named?
 3. Is the place or region named noted for these particular goods or services?

McCarthy, *supra,* at § 14:3.

noted, geographically descriptive corporate names are protected only if secondary meaning is proved. A suggestive tradename is one in which use of "imagination, thought and perception [is necessary] to reach a conclusion as to the nature of the goods." *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y. 1968). Suggestive tradenames, a middle category falling between arbitrary and descriptive, are protected without proof of secondary meaning, as in the arbitrary category.[6]

Determining the correct category of tradenames can be difficult. One court noted "although meant as pigeon holes, these [categories] are instead central tones in a spectrum; they tend to merge at their edges and are frequently difficult to apply." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981). As a result, argument about correct categorization is sometimes easy. This, together with the favorable standard of review, works to A.L.M.N.'s favor in deciding this issue.

However, even with these advantages, A.L.M.N.'s argument that MIRAGE is descriptive or suggestive of Rosoffs' business's geographic location is strained. It is one thing to name a business the SILVER STATE Casino, the LAS VEGAS Billiards, or the CARSON CITY Cleaners; it is another to name it after a phenomenon or thing somehow connected with the topography of a general geographic area. If MIRAGE is considered geographically descriptive of the business, arguably so would many other names that, by some vast leap of logic, tangentially implicate a business's situs.[7] Following A.L.M.N.'s logic, any name remotely connected with the geographic location of a business apparently would be protected only if secondary meaning could be proved in a lawsuit. However, cases finding tradenames to be geographically descriptive are considering, for the most part, a name or nickname of towns, regions, cities, and states, rather than a characteristic or phenomenon somehow connected with

---

[6]A.L.M.N. argues this rule is not absolute, asserting that "weak suggestive marks" need proof of secondary meaning before they are protected. A.L.M.N. cites a couple of cases supporting this purported exception to the general rule. Most courts, however, apparently end their analysis after determining that a mark is suggestive.

[7]Consider, for example, the following names, each with a desert connection: Kangaroo Rat Motel, the Sands Hotel, and Hesperocallis Undulata Motel. Although linked to warm deserts, and therefore Las Vegas, these names are sufficiently attenuated from descriptiveness, such that protection should be afforded without proof of secondary meaning. They fall, at best, in "a twilight zone of terms whose geographical significance . . . is dubious." McCarthy, *supra*, at § 14:2.

these entities.[8] As a result, we conclude that the lower court's determination that there was no material issue of fact about the classification of the tradename "Mirage Motel" was correct—it is clearly an arbitrary name, subject to protection without further factual inquiry.[9]

As noted, the second step in proving infringement is showing that the junior user infringed the senior user's protected tradename. The senior user must prove that the junior user's use of a similar or identical tradename is likely to confuse, cause mistake, or deceive an "appreciable number" of reasonable customers. McCarthy, *supra,* at § 23:1.

McCarthy notes that "Traditionally, the law has classified likelihood of confusion as an issue of fact." *Id.* at §§ 23:22 (footnote omitted), 32:37 (footnote omitted). However, some courts view this ultimate question as a legal issue and others view it as a mixed question of law and fact.[10] *See generally* Comment, *Appellate Review of Lanham Act Violations: Is Likelihood of Confusion a Question of Law or Fact?* 38 Sw. L.J. 743 (1984); Comment, *Likelihood of Confusion Under the Lanham Act: A question of Fact, a Question of Law, or Both?,* 73 Ky. L.J. 235 (1984-85); McCarthy, *supra,* at § 23:22. Accordingly, the scope and manner of appellate review differs.[11]

---

[8]We also note that Las Vegas is not the only city by a warm desert. As well, mirages are not confined solely to warm desert locations. They commonly occur over hot pavement or at sea. *See The Concise Columbia Encyclopedia* 550 (1983). As a result, the word "mirage" does not necessarily pinpoint any specific geographic business situs, but has a logical connection with just about every town or city in North America. Therefore, even assuming some geographic connotation, the term "Mirage" is not likely to connote, to reasonable customers, that the motel is located in Las Vegas.

[9]Another underlying rationale for limiting the protection of geographically descriptive names is missing in this appeal. Limited protection is provided, in part, to prevent users from monopolizing descriptive names equally applicable to a multitude of businesses or products. E. Vandenburgh, *Trademark Law and Procedure* § 4:30 (2nd ed. 1968). The name "Mirage," however, presents no such problem.

[10]How the issue is categorized affects appellate review of tradename infringement cases. Appellate courts in those jurisdictions considering likelihood of confusion a legal issue enjoy greater latitude reviewing appeals based on this issue than those considering it factual. Courts in those jurisdictions might also more readily grant summary judgment.

[11]In this case, the district court concluded that the issue was legal, apparently basing its conclusion on a 1975 Ninth Circuit case. However, in a more recent case, Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352 (9th Cir. 1985), the Ninth Circuit changed its position; it now views likelihood of confusion as a factual issue. ("For the sake of accuracy, uniformity, and consistency with the predominant view in other circuits, we will hereafter review findings of likelihood of confusion under the clearly erroneous standard.") *Id.* at 1356 (footnote omitted).

After consideration of the various approaches other courts have taken, we conclude that, in Nevada, likelihood of confusion will be considered a factual issue. We therefore conclude that the district court, in this case, erred by determining the likelihood of confusion issue as a matter of law.

In determining whether it is likely an appreciable number of consumers will be confused by similar tradenames, courts, regardless of whether they view this ultimate decision as factual or legal, have considered the following factors:

1. The degree of similarity between the tradenames, including appearance, pronunciation, and suggestion of the tradenames;
2. The similarity of services offered by the users;
3. The marketing channels used by the junior and senior users;
4. The evidence of actual confusion;
5. The strength of the senior user's name;
6. The intent of the junior user in adopting the tradename; and
7. The degree of care likely to be exercised by purchasers.

*See Levi Strauss,* 778 F.2d at 1364 (9th Cir. 1985) (Nelson, J., dissenting); Wells Fargo & Co. v. Wells Fargo Express Co., 358 F.Supp. 1065, 1106-07 (D.Nev. 1973) (quoting Chester Barrie, Ltd. v. Chester Laurie, Ltd., 189 F.Supp. 98, 101 (S.D.N.Y. 1960)), *vacated,* 556 F.2d 431 (9th Cir. 1977); McCarthy, *supra,* at § 23:4.

Because these foundational facts must be considered before determining the ultimate issue of likelihood of confusion,[12] summary judgment resolution of the ultimate issue is usually inappropriate, regardless of whether it is considered legal or factual. One court has noted:

> By their very nature some of these factors are so hazy and grayish in nature that a summary judgment cannot be granted merely upon perusal of affidavits, except in those rare instances where the facts are so black and white in nature that it can be stated unequivocally that there is no

---

[12] In Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., 411 F.2d 1097, 1099 (2nd Cir. 1969), *cert. dismissed* 396 U.S. 1054 (1970), the court noted:

> These factors are variable and relative and no single one, because of its presence or absence, is, in itself, determinative of a case. Rather, the method of approach requires the trial court to consider and weigh the evidence relative to each of these points and such other points as, in the particular circumstances before it, the court finds applicable; then, from a balancing of the conclusions reached on all these factors, the court decides whether or not the parties are entitled to the relief or protection sought.

genuine issue as to any material fact and no issues to be resolved at a trial.

National Color Laboratories, Inc. v. Philips Foto Co., 273 F.Supp. 1002, 1004 (S.D.N.Y. 1967). Another court adds:

> Appellate courts have cautioned that the questions ordinarily involved in the trade-mark cases do not readily lend themselves to summary judgment.
>
> . . . .
>
> It is evident that the likelihood of confusion test is one which is particularly ill-adapted to resolution by summary judgment.

*Wells Fargo,* 358 F.Supp. at 1103-07 (D.Nev. 1973).[13]

After consideration of the parties' briefs, oral argument, and the record, we are convinced that material issues of fact exist, in this case, about the likelihood of confusion, including the foundational determinations. A.L.M.N. points out some differences between the two names,[14] the nature of the businesses, and the marketing channels used.[15] A.L.M.N. also alleges, with some support in the record, that the evidence of actual confusion may be slight in relation to the number of customers who have not been confused by the names. Because we are reviewing a summary judgment order, we are bound to accept as true all evidence and inferences favorable to the party against whom the judgment was rendered. Renaud v. 200 Convention Center Ltd., 102 Nev. 500, 728 P.2d 445 (1986). This standard of review, combined with the inherently factual inquiry of the likelihood of confusion test and the facts of this case, mandates reversal of the district court decision.[16]

---

[13]*See also Levi Strauss,* 778 F.2d at 1356 n.5 ("trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual.").

[14]A.L.M.N. also suggests, citing 7-11 Minit Markets, Inc. v. Southland Corp., 301 F.Supp. 1000 (D.Nev. 1969) as support, that because the Secretary of State allowed both names to be registered, a presumption that the two names are not deceptively similar exists. We reject this contention. Although the Secretary of State may have a duty to reject deceptively similar tradenames (*see* Op. Nev. Att'y Gen. 151 (1918)), in common law tradename infringement actions in this state the courts, and the courts alone, determine whether a name is deceptively similar. *See generally,* Comment, *Utah's Business Name Statutes: "An Open invitation to Litigation",* 1983 B.Y.U. L. Rev. 795, 798-99.

[15]*See generally,* Lininger v. Desert Lodge, 160 P.2d 761 (Ariz. 1945); Hotel Syracuse v. Motel Syracuse, 127 N.Y.S.2d 485 (App. 1954), *aff'd,* 130 N.E.2d 620 (1955).

[16]We do not, however, conclude that summary judgment is never appropriate in common law tradename actions where likelihood of confusion is an issue. One could conceive of situations where, even viewing the evidence in

Finally, we must decide whether the lower court erroneously determined that certain logs, prepared in a wise attempt to document the confusion that occurred, are inadmissible hearsay. The Rosoffs submitted, as proof of the actual confusion that has occurred, three logs, prepared by the desk clerks and Mrs. Rosoff, allegedly documenting approximately five hundred incidents where telephone callers, taxicab drivers, customers, and others confused the two businesses. These entries reflect, for example, a variety of telephone calls seeking guests not at the Mirage Motel, confirming non-existent reservations, and the like.

Hearsay is an out of court statement "offered in evidence to prove the truth of the matter asserted."[17] The written statements made by the desk clerks (e.g., on May 1 Mr. X phoned the Mirage, intending to reach La Mirage) were made out of court, at the motel. Moreover, these statements were being used in an attempt to prove the truth of the matter asserted (that Mr. X, confused, phoned the Mirage on May 1), to illustrate that further confusion by customers is likely. As a result, the district court correctly concluded that the logs contained hearsay.

The Rosoffs argue, however, that the logs comply with the business exception to the hearsay rule.[18] In Miranda v. State, 101 Nev. 562, 566, 707 P.2d 1121, 1124 (1985), *cert. denied*, 475 U.S. 1031 (1986), we noted that "the business records exception to the hearsay rule generally permits a party to introduce as evidence reports made during the regularly conducted course of business." The district court concluded, however, that these logs were not made in the regular course of business. We agree.

In Palmer v. Hoffman, 318 U.S. 109 (1943), the U.S. Supreme Court considered signed statements about an accident made by a railroad employee shortly after the accident, but before his death. The court concluded that this report did not fall within the business record exception, stating "Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these

---

a light most favorable to the non-moving party, the facts are so black and white that a full trial would be unnecessary.

[17]NRS 51.035.

[18]NRS 51.135(1) provides:

A memorandum, report, record or compilation of data, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, is not inadmissible under the hearsay rule unless the source of information or the method or circumstances of the preparation indicate lack of trustworthiness.

reports are calculated for use essentially in the court, not in the business. Their primary use is in litigation, not in railroading." *Id.* at 114. *See also* D. Binder, *Hearsay Handbook* § 8.05 (2nd ed. 1983) ("As a general rule, records that are prepared for purposes of litigation are not encompassed by [the business record] exception to the hearsay rule.").

The facts suggest that the Rosoffs' logs were probably prepared primarily for the purpose of litigation, not in the ordinary course of their motel business. The clerks began to keep the logs in January 1986, shortly before the lawsuit commenced. These records have little purpose other than as evidence for litigation. The logs are not, in the Supreme Court's words, "necessary for moteling," but were instead indications of the confusion that resulted after La Mirage Hotel and Casino opened.

As a result, one of the indicia of trustworthiness for business records does not exist. In Clark v. City of Los Angeles, 650 F.2d 1033, 1037 (9th Cir. 1980), *cert. denied,* 456 U.S. 927 (1982), the court noted "The basis for the business record exception is that accuracy is assured because the maker of the record relies on the record in the ordinary course of business activities.[19] This is, we add, particularly true when the maker of the record prepares the documents without knowledge of their probable use in impending litigation. However, in this case, the Rosoffs would not be relying on the records of misplaced telephone calls, lost taxicab drivers, or irate tourists in the normal course of their motel business, and they knew of impending litigation. As a result, one of the bases for assuming business records' accuracy, under this exception to the hearsay rule, does not exist;[20] we therefore conclude that the district court did not err by striking the logs as inadmissible hearsay, not falling within the business record exception.

In conclusion, in light of the above analysis, we reverse and remand this action for trial. However, we emphasize that we express no opinion on the validity or veracity of Rosoffs' cause of action for tradename infringement, or A.L.M.N.'s defense

---

[19]*See also* S. Gard, 4 *Jones on Evidence* 575 (1972) (citations omitted):

> The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.

[20]*See* S. Salzburg, K. Redden, *Federal Rules of Evidence Manual* 832 (4th ed. 1986). The authors note that several courts have expressed "suspicion about the utility of business records when they are offered to support the case of the party who prepared the records." This concern, of course, can be eliminated by sufficient proof of trustworthiness.

against this cause of action. We conclude only that, given the factual context of this action, the nature of the likelihood of confusion test, and the standard of review, this cause of action should not have been summarily decided. Accordingly, we reverse and remand.